UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
|    Briarwood Acquisition, LLC | : | Case No. 15-20596 (AMN) |
|    *Debtor* | : | |
| | : | |
| Putnam Bank | : | |
|    *Movant,* | : | |
| v. | : | |
| Briarwood Acquisition, LLC | : | |
|    *Respondent.* | : | |
| | : | Re: ECF Nos. 72, 85 |

**MEMORANDUM AND ORDER GRANTING
<u>RELIEF FROM STAY, IN PART, TO PUTNAM BANK</u>**

After notice and a hearing held on July 30, 2015 (the "Hearing"), to consider the motion of Putnam Bank (the "Bank") for relief from stay (the "Motion"), ECF No. 72, and the objection of Briarwood Acquisitions, LLC (the "Debtor") to the Motion (the "Objection"), ECF No. 85, and the Court having heard and considered argument by the Bank, the Debtor, and party-in-interest Briarwood Falls Association, for the reasons set forth below, the Court hereby grants relief from stay pursuant to 11 U.S.C. § 362(d)(3)(B)(ii), in part, as more particularly described in this Memorandum and Order.

I.      Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(G).

II.      Findings of Fact

After notice, briefing and argument during the Hearing, the Court makes the following findings of fact:

1. The Debtor owns real property consisting of approximately 117 acres comprised of undeveloped land, as well as developed and partially developed lots along Cook Hill Road; Killingly, Connecticut, known as the Brentwood Falls Condominium Project (collectively, the "Property"). See ECF No. 20 at 1.

2. The Bank holds two mortgages on the Property and the Debtor does not dispute the validity, extent or priority of the liens. ECF No. 20, at 6-7.

3. On November 14, 2014, the Connecticut Superior Court entered a judgment of strict foreclosure against the Debtor and found the fair market value of the Property to be $1,514,000.00, the Bank's debt to be $1,543,337.37, and set the first law day for January 5, 2015. ECF No. 72, at 2; *Putnam Bank v. Briarwood Acquisition, LLC, et al.*, WWMCV146008653S, document no. 108.10 (Connecticut Superior Court, Judicial District of Windham).

4. On December 31, 2014, the Debtor filed a voluntary Chapter 11 bankruptcy petition, thus staying the running of the law days pursuant to 11 U.S.C. § 362(a). *In re Briarwood, LLC*, case number 14-22497 (the "First Chapter 11 Case"), ECF Nos. 1 and 28.

5. On February 18, 2015, this Court dismissed the First Chapter 11 Case because the Debtor – a limited liability company – did not have an attorney as required by the Bankruptcy Code. *Id.*

6. The foreclosure case was reopened when the First Bankruptcy Case was dismissed and a new law day was set for April 6, 2015. ECF No. 72, at 5.

7. On April 6, 2015 (the "Petition Date"), the Debtor filed another voluntary Chapter 11 bankruptcy petition commencing this case. ECF No. 1.

8. On April 16, 2015, the Debtor filed an amended voluntary petition designating the nature of its business as "Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)." ECF No. 25 at 2.

9. During the Hearing, (a) the Debtor conceded that it does not have equity in the property; and (b) the Bank contended it is not adequately protected at this time.

10. On July 15, 2015, the Debtor sold a portion of the Property consisting of a condominium unit known as 12 Oriole Drive, and paid the Bank $200,000 from the sale on account of its first priority mortgage. ECF Nos. 67; 85 at 4.

11. The Debtor did not condition the payment of the sale proceeds from 12 Oriole Drive upon the application of any of the proceeds to the Debtor's obligation to commence monthly payments to the Bank pursuant to § 362(d)(3)(B)(ii).

12. The Debtor and the Bank are in general agreement that the amount of the monthly payments required by § 362(d)(3)(B)(ii) totaled approximately $4,320 per month during the period from April 6, 2015 through July 5, 2015.

13. The ninetieth (90th) day after the Petition Date was July 5, 2015.

14. The Debtor did not commence monthly payments as calculated under § 362(d)(3)(B)(ii) on or before July 5, 2015.

15. The Debtor did not file a chapter 11 plan or seek an extension of the 90-day period set forth in § 362(d)(3)(B)(ii) on or before July 5, 2015.

16. The Debtor has not filed a chapter 11 plan.

17. The Debtor does not have employees or cash flow sufficient to pay the amount of the monthly payments required by § 362(d)(3)(B)(ii). ECF No. 82.

### III.     Applicable Law and Burden of Proof

Upon the filing of a bankruptcy petition, the automatic stay provided by the Bankruptcy Code stays "the enforcement, against the debtor or against property of the

estate, of a judgment obtained before the commencement of the case under this title."

11 U.S.C. § 362(a)(2). In a single asset real estate case, relief from the automatic stay must be granted to a secured creditor under circumstances provided for in 11 U.S.C. § 362(d)(3)(B)(ii), as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- . . .
>
>> (3) with respect to a stay of an act against a single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later –
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>> (B) the debtor has commenced monthly payments that –
>> (i) may, in the debtor's sole discretion, notwithstanding section 362(c)(2), be made from rents or other income generated, before, on or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured lien); and
>> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; . . ..

11 U.S.C. § 362.

A court must also grant relief from stay "if the court finds that the filing was part of a scheme to delay, hinder, or defraud creditors that involved . . . (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). In determining whether a debtor filed a petition as part of a scheme to delay, hinder or defraud creditors pursuant to 11 U.S.C. § 362(d)(4), courts may consider the timing and sequence of the filings. *In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014). Courts may also consider a

debtor's efforts to prosecute the pending case. *In re GEL, LLC*, 495 B.R. 240, 249 (Bankr. E.D.N.Y. 2012).

The moving party bears the burden of proof on the issue of the debtor's equity in property on a motion for relief from stay. 11 U.S.C. § 362(g)(1). However, a court is not required to consider a debtor's equity in the property when evaluating relief under § 362(d)(3)(B)(ii). The debtor "has the burden of proof on all . . . issues" other than equity in the property. 11 U.S.C. § 362(g)(2); *see also, In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y.1994) (distinguishing between the initial burden of going forward and the ultimate burden of persuasion). "The parties are required to meet their respective burdens by a preponderance of the evidence." *In re RYYZ, LLC,* 490 B.R. 29, 35 (Bankr. E.D.N.Y. 2013). "On a motion under Section 362(d)(3), the creditor bears the initial burden of demonstrating the quantum of its claim and its security interest in the real property. The debtor must establish that a reorganization based on its plan is in prospect." *Id.* at 37.

IV.    Discussion

These bankruptcy proceedings were commenced to avoid the running of law days pursuant to a state court foreclosure judgment. The present motion for relief from stay by the Bank is essentially a two-party dispute over real property. The Bank now seeks relief from stay to continue its foreclosure action in state court because the Debtor, a single asset real estate debtor, failed to commence monthly payments as defined in 11 U.S.C. § (d)(3)(B)(ii) and failed to propose a plan of reorganization within ninety (90) days after the Petition Date. The Bank also argues that the Debtor engaged in a scheme to hinder or delay the Bank by

filing for bankruptcy more than once, and therefore the Court should grant relief from stay pursuant to § 362(d)(4)(B).

    A. <u>§ 362(d)(3)(B):   Monthly Payments and a Plan of Reorganization</u>.

It is undisputed that the Debtor did not commence making monthly payments pursuant to § 362(d)(3)(B) within the first ninety (90) days of this single asset real estate case.  The parties generally agree that throughout the initial ninety (90) day period of this case the amount of the monthly payments required by § 362(d)(3)(B)(ii) totaled approximately $4,320.00.

Section 362(d)(3) has been interpreted as expressing Congress' intent to expedite single asset real estate cases.  See *In re South Side LLC,* 474 B.R. 391, 421 (Bankr. E.D.N.Y. 2012).  This goal is accomplished by ensuring that if a debtor files a bankruptcy case and can "neither propose a confirmable plan nor make payments in an amount equivalent to the non-default contract rate of interest, the automatic stay will be modified." *Id.*

Here, the Bank collected rent from the Property during a large portion of the first ninety (90) days of this case.  From the gross rents totaling $8,021.35 collected directly by the Bank, the Bank paid for force-placed insurance, real property taxes, and condominium fees for the properties (units) owned by the Debtor, paying itself a net amount of approximately $1,670.00.  ECF No. 64.  The only payment the Debtor affirmatively made to the Bank during this case was through a check tendered immediately before the Hearing, in the amount of approximately $1,216.00.  ECF No. 89 at 16:30, 18:15 (audio file).  Even if the payment had been made within the relevant ninety (90) day period, the payments together, approximately $2,886.00, fell short of the $4,320.00 due pursuant to § 362(d)(3)(B)(ii).

Based on the present record, the Debtor does not have sufficient liquidity to make the monthly payments required by § 362(d)(3)(B)(ii), regardless of when they commence.  Review of the sole monthly operating report filed in the case, ECF No. 82, shows negative cash flow for the month of June 2015.  The Debtor's sale of 12 Oriole Drive was only possible because of a volunteer payment – a gift – by the present officer of the Debtor, Mr. Jack Daly.  ECF Nos. 67, 85.  The Debtor recently filed another motion to sell another portion of the Bank's collateral and presented the same scenario:  the Debtor cannot afford to close the sale transaction without accepting a gift from Mr. Daly.  ECF No. 91.  In these circumstances, it appears unlikely a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable period of time can be proposed.

The Debtor's hope, as expressed during the Hearing, is that it can sell off portions of the Bank's collateral, pay down the principal indebtedness and thereby reduce the monthly amount due under § 362(d)(3)(B)(ii).  The Debtor also expressed hope that it would be able to refinance the remaining indebtedness to the Bank, thereby allowing the Debtor the opportunity to further develop the remaining portions of the Property.

The Debtor argued that the Court should adopt and follow the rationale set forth in *In re: World Properties, LLC*, 14-20535(ASD), 2014 WL 3767429 (Bankr. D. Conn. 2014).  However, in that case, United States Bankruptcy Judge Albert S. Dabrowski found that the debtor had equity in the property, and the secured lender conceded that it was adequately protected.  *In re: World Properties*, 2014 WL 3767429 at *1.  Here, unlike the debtor in the *World Properties* case, the

Debtor concedes it has no equity in the Property, and the secured lender, the Bank, contends it is not adequately protected so that case is not relevant here.[1]

For the foregoing reasons, the Court concludes that the Debtor did not timely file a plan nor commence monthly payments as required by § 362(d)(3)(B)(ii), and the Court is therefore required to terminate, annul, modify, or condition the stay. The Court concludes that termination of the stay is appropriate because the Debtor is unable to make regular monthly payments to the Bank from the assets of the estate in an amount approximating the amount required under § 362(d)(3)(B)(ii).

    B. § 362(d)(4):    Hindrance and delay.

The Court concludes on the record here that the Debtor has not engaged in a scheme to hinder and delay the Bank from exercising its rights against the Property. The Court acknowledges that the timing of the filings demonstrates that the bankruptcies were calculated to draw out the foreclosure process and impair the ability of the Bank to foreclose on the property. *See In re Richmond*, 513 B.R. at 38. However, the Court notes the Debtor rapidly took significant steps to liquidate property very soon after this case was commenced the second time. For example, the Debtor sold 12 Oriole Drive for $200,000 and paid that amount to the Bank within the first one hundred (100) days after the Petition Date in this case and has filed a motion to sell another parcel. ECF Nos. 75, 76, and 78. The Court finds the Debtor's representation that it is in the process of negotiating the sale of a third parcel to be credible.

---

[1] The Court also does not adopt the underlying premise of *In re World Properties, LLC,* that a secured lender is not entitled to relief from stay under § 362(d)(3)(B) when the conditions of that section have not been met by a debtor.

The Debtor also timely retained counsel to help it prosecute this bankruptcy case, *see* ECF Nos. 17 and 48, retained special counsel to facilitate the sale of its real property, *see* ECF Nos. 43 and 54, filed all of its schedules and summaries, *see* ECF Nos. 18 through 24, moved to use cash collateral, ECF No. 59, and filed monthly operating reports. ECF Nos. 44, 63, and 82. Based on this activity, the Court finds that the Debtor has been making significant effort to prosecute its current bankruptcy case and therefore denies the Motion to the extent it is premised on § 362(d)(4). See *In re GEL, LLC*, 495 B.R. at 249.

V. Conclusion

For the foregoing reasons, it is hereby ordered that the Motion, ECF No. 72, is granted, in part, insofar as the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Bank, and/or its successors and assigns, to exercise its rights, if any, with respect to the Property pursuant to non-bankruptcy law.

Dated at Hartford, Connecticut on August 7, 2015.

*Ann M. Nevins*
United States Bankruptcy Judge